Ralph NADER et al., Plaintiffs,

v.

Robert H. BORK, Acting Attorney General of the United States, Defendant.

Civ. A. No. 1954–73.

United States District Court, District of Columbia.

Nov. 14, 1973.

Alan B. Morrison, W. Thomas Jacks, Raymond T. Bonner, Washington, D. C., for plaintiffs.

Irwin Goldbloom, Ray Battocchi, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

GESELL, District Judge.

This is a declaratory judgment and injunction action arising out of the discharge of Archibald Cox from the office of Watergate Special Prosecutor. Defendant Robert H. Bork was the Acting Attorney General who discharged Mr. Cox. Plaintiffs named in the Amended Complaint are as listed above.

Some issues have already been decided. The matter first came before the Court on plaintiff's motion for preliminary injunction and a request that the trial of the action on the merits be consolidated with the preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. Defendant filed opposition papers, and a hearing was held on the detailed affidavits and briefs filed by the parties. The Court determined that the case was in proper posture for a determination on the merits at that time.

All injunctive relief requested in the proposed preliminary injunction tendered at the hearing and in the Amended Complaint was denied from the bench. The effect of the injunctions sought would have been to reinstate Mr. Cox as Watergate Special Prosecutor and to halt the Watergate investigation until he had reassumed control. It appeared to the Court that Mr. Cox's participation in this case was required before such relief could be granted. *See* Rule 19(a) of the Federal Rules of Civil Procedure. Yet Mr. Cox has not entered into this litigation, nor has he otherwise sought to be reinstated as Special Prosecutor. On the contrary, his return to prior duties at Harvard has been publicly announced. Moreover, a new Watergate Special Prosecutor was sworn in on November 5, 1973, and the Court felt that the public interest would not be served by placing any restrictions upon his on-going investigation of Watergate-related matters.

Plaintiffs continue to press for a declaratory judgment on the only remaining issue to be resolved: the legality of the discharge of Mr. Cox and of the temporary abolition of the Office of Watergate Special Prosecutor. To this end, it must initially be determined whether plaintiffs have standing and whether a justiciable controversy still exists.

Defendant Bork contends that the congressional plaintiffs lack stand·

ing [1] and that the controversy is moot. This position is without merit. The discharge of Mr. Cox precipitated a widespread concern, if not lack of confidence, in the administration of justice. Numerous bills are pending in the Senate and House of Representatives which attempt to insulate the Watergate inquiries and prosecutions from Executive interference, and impeachment of the President because of his alleged role in the Watergate matter—including the firing of Mr. Cox—is under active consideration.[2] Given these unusual circumstances, the standing of the three congressional plaintiffs to pursue their effort to obtain a judicial determination as to the legality of the Cox discharge falls squarely within the recent holding of the United States Court of Appeals for the District of Columbia Circuit in Mitchell v. Laird, No. 71–1510 (D.C.Cir. March 20, 1973). Faced with a challenge by a group of congressmen to the legality of the Indo-China War, the Court recognized standing in the following forceful terms:

> If we, for the moment, assume that defendants' actions in continuing the hostilities in Indo-China were or are beyond the authority conferred upon them by the Constitution, a declaration to that effect would bear upon the duties of plaintiffs to consider whether to impeach defendants, and upon plaintiffs' quite distinct and different duties to make appropriations to support the hostilities, such as raising an army or enacting other civil or criminal legislation. In our view, these considerations are sufficient to give plaintiffs a standing to make their complaint. . . .

*Id.* at 4.

Unable to distinguish this holding, defendant Bork suggests that the instant case has been mooted by subsequent events and that the Court as a discretionary matter should refuse to rule on the legality of the Cox discharge. This view of the matter is more academic than realistic, and fails to recognize the insistent demand for some degree of certainty with regard to these distressing events which have engendered considerable public distrust of government. There is a pressing need to declare a rule of law that will give guidance for future conduct with regard to the Watergate inquiry.

While it is perfectly true that the importance of the question presented cannot alone save a case from mootness, Marchand v. Director, United States Probation Office, 421 F.2d 331, 333 (1st Cir. 1970), the congressional plaintiffs before the Court have a substantial and continuing interest in this litigation. It is an undisputed fact that pending legislation may be affected by the outcome of this dispute and that the challenged conduct of the defendant could be repeated with regard to the new Watergate Special Prosecutor if he presses too hard,[3] an event which would undoubtedly prompt further congressional action. This situation not only saves the case from mootness, *see* United States v. Concentrated Phosphate Export Assoc., 393 U.S. 199, 203–204, 89 S.Ct. 361, 21 L.Ed. 2d 344 (1968); Friend v. United States,

---

1. At the injunction hearing, the Court dismissed Mr. Nader as a plaintiff from the bench, it being abundantly clear that he had no legal right to pursue these claims. Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

2. Referring to various bills pending in the Senate, Senator Moss stated, "I am severely hampered in my ability to discharge my duties because of uncertainty which exists with respect to the legality of Special Prosecutor Cox's dismissal and the abolition of his office." Affidavit of Senator Frank E. Moss, dated October 29, 1973. Congressman Waldie is

a member of the House Judiciary Committee and both he and Congresswoman Abzug have introduced resolutions calling for the impeachment of the President because of the Cox dismissal and other matters.

3. The regulation from which the present Watergate Special Prosecutor, Mr. Leon Jaworski, derives his authority and his independence from the Executive branch is virtually identical to the original regulation at issue in this case. *See* note 13 *infra*. It is therefore particularly desirable to enunciate the rule of law applicable if attempts are made to discharge him.

128 U.S.App.D.C. 323, 388 F.2d 579 (1967), but forces decision. The Court has before it an issue that is far from speculative and a strong showing has been made that judicial determination of that issue is required by the public interest. Under these circumstances, it would be an abuse of discretion not to act.

Turning then to the merits, the facts are not in dispute and must be briefly stated to place the legal discussion in the proper context.

The duties and responsibilities of the Office of Watergate Special Prosecutor were set forth in a formal Department of Justice regulation,[4] as authorized by statute.[5] This regulation gave the Watergate Special Prosecutor very broad power to investigate and prosecute offenses arising out of the Watergate break-in, the 1972 Presidential election, and allegations involving the President, members of the White House staff or presidential appointees. Specifically, he was charged with responsibility to conduct court proceedings and to determine whether or not to contest assertions of Executive privilege. He was to remain in office until a date mutually agreed upon between the Attorney General and himself, and it was provided that "The Special Prosecutor will not be removed from his duties except for extraordinary improprieties on his part."

On the same day that this regulation was promulgated, Archibald Cox was designated as Watergate Special Prosecutor.[6] Less than four months later, Mr. Cox was fired by defendant Bork. It is freely admitted that he was not discharged for an extraordinary impropriety.[7] Instead, Mr. Cox was discharged on the order of the President because he was insisting upon White House compliance with a Court Order which was no longer subject to further judicial review. After the Attorney General had resigned rather than fire Mr. Cox on this ground and the Deputy Attorney General had been discharged for refusing to do so, defendant Bork formally dismissed Mr. Cox on October 20, 1973, sending him the following letter:[8]

Dear Mr. Cox:

As provided by Title 28, Section 508(b) of the United States Code and Title 28, Section 0.132(a) of the Code of Federal Regulations, I have today assumed the duties of Acting Attorney General.

In that capacity I am, as instructed by the President, discharging you, effective at once, from your position as Special Prosecutor, Watergate Special Prosecution Force.

Very truly yours,

ROBERT H. BORK

Acting Attorney General

Thereafter, on October 23, Mr. Bork rescinded the underlying Watergate Special Prosecutor regulation, retroactively, effective as of October 21.[9]

The issues presented for declaratory judgment are whether Mr. Cox was lawfully discharged by defendant on October 20, while the regulation was still in existence, and, if not, whether the subsequent cancellation of the regulation lawfully accomplished his discharge. Both suppositions will be considered.

■■ It should first be noted that Mr. Cox was not nominated by the President and did not serve at the President's pleasure. As an appointee of the Attor-

---

4. 38 F.R. 14688 (June 4, 1973). The terms of this regulation were developed after negotiations with the Senate Judiciary Committee and were submitted to the Committee during its hearings on the nomination of Elliot Richardson for Attorney General. Hearings Before the Senate Comm. on the Judiciary, 93rd Cong., 1st Sess. 144–46 (1973).

5. See 5 U.S.C. § 301.

6. Justice Department Internal Order 518–73 (May 31, 1973).

7. See Defendant's Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction, at 13.

8. Exhibit 12 to the Affidavit of W. Thomas Jacks.

9. 38 F.R. 29466 (Oct. 23, 1973).

ney General,[10] Mr. Cox served subject to congressional rather than Presidential control. *See* Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926). The Attorney General derived his authority to hire Mr. Cox and to fix his term of service from various Acts of Congress.[11] Congress therefore had the power directly to limit the circumstances under which Mr. Cox could be discharged, *see* United States v. Perkins, 116 U.S. 483, 6 S.Ct. 449, 29 L.Ed. 700 (1886), and to delegate that power to the Attorney General, *see* Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). Had no such limitations been issued, the Attorney General would have had the authority to fire Mr. Cox at any time and for any reason. However, he chose to limit his own authority in this regard by promulgating the Watergate Special Prosecutor regulation previously described. It is settled beyond dispute that under such circumstances an agency regulation has the force and effect of law, and is binding upon the body that issues it. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (*"Accardi I"*); Bonita v. Wirtz, 125 U.S.App. D.C. 163, 369 F.2d 208 (1966); American Broadcasting Co. v. F.C.C., 85 U.S. App.D.C. 343, 179 F.2d 437 (1949); United States v. Chapman, 179 F.Supp. 447 (E.D.N.Y.1959). As the Ninth Circuit observed in United States v. Short, 240 F.2d 292, 298 (9th Cir. 1956):

> An administrative regulation promulgated within the authority granted by statute has the force of law and will be given full effect by the courts.

■ Even more directly on point, the Supreme Court has twice held that an Executive department may not discharge one of its officers in a manner inconsistent with its own regulations concerning such discharge. *See* Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, *supra*.

The firing of Archibald Cox in the absence of a finding of extraordinary impropriety was in clear violation of an existing Justice Department regulation having the force of law and was therefore illegal.

■ Defendant suggests that, even if Mr. Cox's discharge had been unlawful on October 20, the subsequent abolition of the Office of Watergate Special Prosecutor was legal and effectively discharged Mr. Cox at that time. This contention is also without merit. It is true that an agency has wide discretion in amending or revoking its regulations. United States v. O'Brien, 391 U.S. 367, 380, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). However, we are once again confronted with a situation in which the Attorney General voluntarily limited his otherwise broad authority. The instant regulation contains within its own terms a provision that the Watergate Special Prosecutor (as opposed to any particular occupant of that office) will continue to carry out his responsibilities until he consents to the termination of that assignment.[12] This clause can only be read as a bar to the total abolition of the Office of Watergate Special Prosecutor without the Special Prosecutor's consent, and the Court sees no reason why the Attorney General cannot by regulation impose such a limitation upon himself and his successors.

■ Even if the Court were to hold otherwise, however, it could not conclude that the defendant's Order of October 23 revoking the regulation was legal. An agency's power to revoke its regulations is not unlimited—such action must be neither arbitrary nor unreasonable. Kelly v. United States Dept. of Interior, 339 F.Supp. 1095, 1100 (E.D.Cal.1972). *Cf.* Grain Elevator, Flour and Feed Mill Workers v. N. L. R. B., 126 U.S.App.D.C. 219, 376 F.2d 774, cert. denied, 389 U.S. 932, 88 S.Ct. 296, 19 L.Ed.2d 285 (1967); Morrison Mill Co. v. Freeman, 124 U.S.

10. *See* 38 F.R. 14688 (June 4, 1973).

11. 5 U.S.C. § 301; 28 U.S.C. §§ 509–510.

12. *See* 38 F.R. 14688 (June 4, 1973): "The Special Prosecutor will carry out these respon-

sibilities with the full support of the Department of Justice, until such time as, in his judgment, he has completed them or until a date mutually agreed upon between the Attorney General and himself."

App.D.C. 334, 365 F.2d 525 (1966), cert. denied, 385 U.S. 1024, 87 S.Ct. 741, 17 L.Ed.2d 672 (1967). In the instant case, the defendant abolished the Office of Watergate Special Prosecutor on October 23, and reinstated it less than three weeks later under a virtually identical regulation.[13] It is clear that this turnabout was simply a ruse to permit the discharge of Mr. Cox without otherwise affecting the Office of the Special Prosecutor—a result which could not legally have been accomplished while the regulation was in effect under the circumstances presented in this case. Defendant's Order revoking the original regulation was therefore arbitrary and unreasonable, and must be held to have been without force or effect.

These conclusions do not necessarily indicate that defendant's recent actions in appointing a new Watergate Special Prosecutor are themselves illegal, since Mr. Cox's evident decision not to seek reinstatement necessitated the prompt appointment of a successor to carry on the important work in which Mr. Cox had been engaged. But that fact does not cure past illegalities, for nothing in Mr. Cox's behavior as of October 23 amounted to an extraordinary impropriety, constituted consent to the abolition of his office, or provided defendant with a reasonable basis for such abolition.

 Plaintiffs have emphasized that over and beyond these authorities the Acting Attorney General was prevented from firing Mr. Cox by the explicit and detailed commitments given to the Senate, at the time of Mr. Richardson's confirmation, when the precise terms of the regulation designed to assure Mr. Cox's independence were hammered out. Whatever may be the moral or political implications of the President's decision to disregard those commitments, they do not alter the fact that the commitments had no legal effect. Mr. Cox's position was

not made subject to Senate confirmation, nor did Congress legislate to prevent illegal or arbitrary action affecting the independence of the Watergate Special Prosecutor.

 The Court recognizes that this case emanates in part from congressional concern as to how best to prevent future Executive interference with the Watergate investigation. Although these are times of stress, they call for caution as well as decisive action. The suggestion that the Judiciary be given responsibility for the appointment and supervision of a new Watergate Special Prosecutor, for example, is most unfortunate. Congress has it within its own power to enact appropriate and legally enforceable protections against any effort to thwart the Watergate inquiry. The Courts must remain neutral. Their duties are not prosecutorial. If Congress feels that laws should be enacted to prevent Executive interference with the Watergate Special Prosecutor, the solution lies in legislation enhancing and protecting that office as it is now established and not by following a course that places incompatible duties upon this particular Court. As Judge Learned Hand warned in United States v. Marzano, 149 F.2d 923, 926 (2 Cir. 1945):

> Prosecution and judgment are two quite separate functions in the administration of justice; they must not merge.

This Memorandum contains the Court's findings of fact and conclusions of law. The rulings made are set out in the attached Final Order and Declaratory Judgment.

### FINAL ORDER AND DECLARATORY JUDGMENT

On the basis of findings of fact and conclusions of law set forth in an accompanying Memorandum filed this day, it is hereby

---

13. The two regulations are identical, except for a single addition to the new regulation which provides that the Special Prosecutor may not even be discharged for extraordinary improprieties unless the President determines that it is the "consensus" of certain specified congressional leaders that discharge is appropriate. Compare 38 F.R. 30738 (Nov. 9, 1973) with 38 F.R. 14688 (June 4, 1973).

Ordered and Decreed that:

(1) Plaintiff's motion for leave to file an Amended Complaint and add additional plaintiffs is granted.

(2) Plaintiff's motion for preliminary injunction is denied, and the trial of the action on the merits is advanced and consolidated with the hearing on said motion.

(3) Mr. Ralph Nader is dismissed as plaintiff for lack of standing.

(4) All injunctions prayed for in the Amended Complaint are denied.

(5) The Court declares that Archibald Cox, appointed Watergate Special Prosecutor pursuant to 28 C.F.R. § 0.37 (1973), was illegally discharged from that office.